1  PATRICK E. PREMO (CSB No. 184915)
   ppremo@fenwick.com
2  HECTOR J. RIBERA (CSB No. 221511)
   hribera@fenwick.com
3  JEFFREY A. WARE (CSB No. 271603)
   jware@fenwick.com
4  FENWICK & WEST LLP
   Silicon Valley Center
5  801 California Street
   Mountain View, CA  94041
6  Telephone:   (650) 988-8500
   Facsimile:    (650) 938-5200
7
   Attorneys for Plaintiff
8  HEWLETT-PACKARD COMPANY

9              UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEWLETT-PACKARD COMPANY, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TURNKEY SOLUTIONS CORPORATION, a Colorado corporation,<br><br>Defendant. | Case No.: 5:15-cv-3182<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Hewlett-Packard Company ("HP"), for its Complaint for Declaratory Judgment against Defendant TurnKey Solutions Corporation ("TurnKey"), avers the following:

**NATURE OF THE ACTION**

1.  This is a federal diversity action based on the laws of California.  Over a period of nearly six months, culminating in a lengthy cease-and-desist letter issued on or about June 3, 2015 ("Demand Letter"), TurnKey claims that (a) HP breached the confidentiality provisions of the parties' Software License and Distribution Agreement for Third Party Branded Products, dated May 16, 2012 ("OEM Agreement"); (b) HP's Unified Functional Testing Version 12.5 Release ("UFT v. 12.5") incorporates TurnKey's misappropriated trade secrets; and (c) HP fraudulently induced TurnKey into providing HP confidential and/or trade secret information for

the improper purpose of using that information in a competing product. A true and correct copy of the Demand Letter is attached hereto as **Exhibit A**. HP denies these allegations and seeks a declaration that it did not breach the OEM Agreement and did not misappropriate TurnKey's trade secrets.

## THE PARTIES

2. HP is a Delaware corporation having its principal place of business at 3000 Hanover Street, Palo Alto, CA 94304.

3. On information and belief, TurnKey is a Colorado Corporation having a principal place of business at 143 Union Boulevard, Suite 1020, Lakewood, CO 80228.

## JURISDICTION AND VENUE

4. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. An actual, substantial, and continuing justiciable controversy exists between HP and TurnKey that requires a declaration of rights by this Court.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over TurnKey because Section 11.15 of the OEM Agreement expressly includes TurnKey's consent to jurisdiction in this District. Personal jurisdiction is also proper because a substantial part of the events giving rise to the claims herein occurred in this District.

7. Venue is proper pursuant to 28 U.S.C. § 1391 because TurnKey is subject to personal jurisdiction in this District and a substantial part of the events giving rise to the claims herein occurred in this District. Section 11.15 also states that: "This Agreement will be governed in all respects by the laws of the State of California without reference to any choice of laws provisions."

## INTRADISTRICT ASSIGNMENT

8. This is an Intellectual Property Action subject to district-wide assignment under Local Rule 3-2(c).

FENWICK & WEST LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**FACTUAL BACKGROUND**

9. HP offers a highly-effective, comprehensive functional testing suite of products and services that enable businesses to deliver quality applications across computing platforms. Among these is HP's Unified Functional Testing software ("UFT"), which automates testing through an intuitive, visual user experience that ties manual, automated, and framework-based testing together into one integrated development environment. This far-reaching solution significantly reduces the cost and complexity of the functional testing process while driving continuous quality.

10. In 2012, HP and TurnKey executed the written OEM Agreement whereby TurnKey provided a license to HP to use, reproduce, display and distribute, and disclose certain TurnKey add-on products to UFT and other HP Application Lifecycle Management ("ALM") products. These TurnKey add-on offerings include cFactory, specified Accelerators, and docEngine. The OEM Agreement has been in effect continuously from May 2012 through the date of this Complaint.

11. HP regularly improves and updates its ALM Products with new software releases, and in or about June 2014, HP began the planning and development of the UFT v. 12.5 Release.

12. In or about August 2014, Mr. Raffi Margaliot became HP's General Manager for the Application Delivery Management (ADM) Business Unit, responsible for HP's UFT and ALM products. In or about late August and early September 2014, TurnKey's President and CEO, Mr. Daniel Gannon, sent emails on three occasions to Mr. Margaliot requesting a meeting for the purpose of demonstrating TurnKey's products in an effort to more successfully leverage the HP relationship. Ultimately, TurnKey arranged two remote meetings with HP employees on or about October 7 and 28, 2014 ("October 2014 Presentations"). At these meetings, TurnKey presented a PowerPoint presentation by video conference, but HP is informed and believes and on that basis avers that TurnKey did not provide technical materials or a copy of the PowerPoint presentation to HP employees.

13. At the December 2014 HP Discover Conference in Barcelona, Spain, TurnKey informed HP that it believed there may be overlap between the UFT v. 12.5 Release and

TurnKey's products. On or about December 9, 2014, HP is informed and believes, and on that basis avers, that HP employee Mr. Eran Bachar personally presented the BPT (Business Process Testing) v. 12.5 Release roadmap to TurnKey executives, including Mr. Gannon and Mr. Dale Ellis, TurnKey Founder and CTO. Neither Mr. Gannon nor Mr. Ellis stated to HP at the end of the meeting that HP copied their technology.

14. On or about March 5, 2014, HP held another meeting with TurnKey executives, including Mr. Gannon and Mr. Ellis, where Mr. Bachar presented the BPT v. 12.5 roadmap and release video demonstrations. At the end of the meeting, Mr. Ellis stated there was no overlap between HP BPT v. 12.5 and TurnKey products and Mr. Gannon did not contradict that statement. However, after the meeting Mr. Gannon communicated to HP that he believed there was product overlap between HP BPT v. 12.5 and TurnKey products and HP's products somehow incorporated TurnKey's confidential information.

15. On June 3, 2015, HP received the Demand Letter from TurnKey's legal counsel demanding that "HP cease and desist from making, using, offering, or selling" UFT v. 12.5. TurnKey also asserted several factual and legal allegations of wrongdoing in the Demand Letter, which were and are false.

16. In the Demand Letter, TurnKey states that TurnKey's relationship with HP is governed by the OEM Agreement, including provisions regarding the protection of confidential information. HP agrees that its relationship with TurnKey is governed by the OEM Agreement and other agreements it has with TurnKey.

17. TurnKey further alleges that (1) HP had "virtually unlimited access" to TurnKey's "Confidential Information" as defined by and subject to the OEM Agreement, including information provided at the October 2014 Presentations; (2) HP's UFT v. 12.5 "improperly incorporates Confidential Information of TurnKey in violation of the OEM Agreement"; (3) "HP's improper use of TurnKey Confidential Information constitutes, at minimum, breach of the confidentiality provisions of the OEM Agreement and unlawful misappropriation of TurnKey's trade secrets"; and (4) "HP fraudulently induced TurnKey to provide it with Confidential Information . . . [by providing] multiple false assurances that HP had no plans to build a

competitive product." TurnKey's Demand Letter allegations are false and lack factual support.

18. The Demand Letter fails to identify any specific TurnKey technology provided to HP that was marked or otherwise identified as "Confidential Information" as required by the OEM Agreement. The Demand Letter includes five alleged TurnKey "technical functions," which do not constitute actual trade secret information, but instead consist of generic descriptions of functionalities that have long existed in HP's functional testing suite of products.

19. TurnKey also fails to identify what specific TurnKey confidential information was allegedly incorporated by UFT v. 12.5 or how UFT v. 12.5 utilizes this information.

20. TurnKey's Demand Letter allegations are not only false, its motivation for making these allegations and cease and desist demand is improper. HP is informed and believes, and on that basis avers, that TurnKey seeks to block the forthcoming release of UFT v. 12.5 in order to extract a windfall settlement payment from HP, force an acquisition of TurnKey by HP, and/or otherwise disrupt HP's business operations.

### FIRST CLAIM FOR RELIEF
### (Declaratory Judgment that HP Has Not Violated the OEM Agreement)

21. Paragraphs 1-20 are incorporated by reference as if fully restated herein.

22. TurnKey asserts that HP has violated, at minimum, the confidentiality provisions of the OEM Agreement.

23. HP has not and is not violating any provisions of the OEM Agreement.

24. An actual controversy thus exists between TurnKey on the one hand, and HP on the other, as to whether HP has violated the OEM Agreement.

25. Accordingly, HP seeks a judgment declaring that it has not and does not violate the OEM Agreement.

### SECOND CLAIM FOR RELIEF
### (Declaratory Judgment that HP Has Not Misappropriated TurnKey's Trade Secrets)

26. Paragraphs 1-25 are incorporated by reference as if fully restated herein.

27. TurnKey asserts that HP has unlawfully misappropriated TurnKey's trade secrets.

28. HP has not misappropriated TurnKey's trade secrets, including under California Civil Code § 3426 *et seq.*

29. An actual controversy thus exists between TurnKey on the one hand, and HP on the other, as to whether HP has misappropriated TurnKey's trade secrets.

30. Accordingly, HP seeks a judgment declaring that it has not misappropriated TurnKey's trade secrets.

### THIRD CLAIM FOR RELIEF
**(Declaratory Judgment that HP Did Not Fraudulently Induce TurnKey to Provide Confidential Information)**

31. Paragraphs 1-30 are incorporated by reference as if fully restated herein.

32. TurnKey asserts that HP, through HP's employees, fraudulently induced TurnKey to provide HP with confidential information in order to use this information in HP products that compete with TurnKey's product.

33. HP, through HP's employees, did not fraudulently induce TurnKey to provide HP with confidential information.

34. TurnKey also cannot state a claim for fraudulent inducement based on the facts alleged in the Demand Letter. TurnKey's fraudulent inducement allegations arise from the identical nucleus of facts as its trade secret misappropriation allegations and thus are preempted by the California Uniform Trade Secrets Act.

35. An actual controversy thus exists between TurnKey on the one hand, and HP on the other, as to whether HP, through HP's employees, fraudulently induced TurnKey to provide HP with confidential information.

36. Accordingly, HP seeks a judgment declaring that HP did not fraudulently induce TurnKey to provide HP with confidential information.

### PRAYER FOR RELIEF

WHEREFORE, HP prays for a declaratory judgment against TurnKey as follows:

A. Judgment for HP declaring that HP has not and does not violate the OEM Agreement;

B. Judgment for HP declaring that HP has not misappropriated TurnKey's trade secrets, including under California Civil Code § 3426 *et seq*.;

C. Judgment for HP declaring that HP did not fraudulently induce TurnKey to provide HP with TurnKey's confidential information;

D. Award of attorneys' fees and costs to HP to the extent permitted under the applicable law; and

E. Award to HP such other relief as the Court deems just and reasonable.

Dated: July 9, 2015       FENWICK & WEST LLP


By:   */s/ Patrick E. Premo*
          Patrick E. Premo

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff HP demands a jury trial as to all matters triable of right by a jury.

Dated: July 9, 2015                     FENWICK & WEST LLP


By:  */s/ Patrick E. Premo*
       Patrick E. Premo

Attorneys for Plaintiff
HEWLETT-PACKARD COMPANY